THOMAS F. CLEVERLY *vs.* SARAH L. MOSELEY.

Suffolk. November 19, 1888. — January 3, 1889.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Mechanic's Lien — Statement in Registry of Deeds — Description — Question of Fact.*

A statement, filed under the Pub. Sts. c. 191, § 6, in the registry of deeds, described the property intended to be covered by a mechanic's lien as a lot, the bounds of which were not given, situated "on the northerly side of E. Avenue, between B. Street and R. Avenue," which lot might be "identified by house standing thereon, the first two stories being of stone and the third story of wood, the same being the first house on E. Avenue from R. Avenue, and the second house from said B. Street," and owned, according to the claimant's "best knowledge and belief, by H. M." This house, the first story of which was a basement, stood about three hundred feet to the north of E. Avenue, with open land

between, and, although it was the second house from R. Avenue and the third from B. Street if other houses on that portion of E. Avenue were counted as such, there was "no other house anywhere in the vicinity answering at all to such description"; and H. M. was called the owner in the plans and specifications for it, and was supposed to be such. *Held*, on a petition to enforce the lien, that whether the lot could be reasonably recognized from the description was for the jury.

PETITION under the Pub. Sts. c. 191, to enforce a mechanic's lien for labor performed in the erection of a house on a lot of land in Boston, owned by the respondent. At the trial in the Superior Court, before *Sherman*, J., the only question was as to the sufficiency of the description of the property intended to be covered by the lien in the statement filed by the petitioner in the registry of deeds. This statement, which was introduced in evidence by the petitioner, after reciting that the labor was performed in the erection of a building situated on a lot of land in Boston, proceeded: "which lot is described as follows : situated on the northerly side of Englewood Avenue, which leads from Beacon Street to Roxbury Avenue, near said Roxbury Avenue, and may be identified by house standing thereon, the first two stories being of stone and the third story of wood, the same being the first house on Englewood Avenue from Roxbury Avenue, and the second house from said Beacon Street ; said lot of land being owned, to the best of my knowledge and belief, by Herbert Moseley, of Needham, Mass."

The petitioner offered evidence tending to prove the following facts. Englewood Avenue ran from Beacon Street in a northwesterly direction about four hundred feet, and then turned and ran in a westerly direction about nine hundred and fifty feet, to its intersection with Roxbury Avenue. The latter avenue ran into Englewood Avenue from the south, and did not, at the time the statement was filed, extend beyond it. The premises in question were situated on the side of a steep hill rising on the northerly side of Englewood Avenue, and the house was placed about three hundred feet north from a point on Englewood Avenue about three hundred and fifty feet east of its intersection with Roxbury Avenue. An open field, over which there was no travelled way, lay between the house and the avenue, which was the only street from which the premises could be reached.

The petitioner testified that the house was a three-story house, the first and second stories being built of stone, and the third story of wood; that the first story was a basement story, with full-length windows all along the southerly side facing Englewood Avenue, the window-sills being two or three feet above the ground; that on that side the distance from the ground up to the floor of the second story was about ten feet; that, looking from Englewood Avenue, the house had every appearance of being constructed, the first two stories of stone, and the third of wood; that on the easterly side of the house was a full-length door near the southerly corner, which led into the first or basement story, the door-sill being one step above the ground; that on the northerly side, where the ground was highest, the floor of the second story was five or six feet above the ground, the windows in the first or basement story being about half the usual length; that there was a piazza on the west side, on a level with the floor of the second story, which was carried back for a distance on the northerly side, with lattice-work around it extending down to the ground; and that in front of the piazza, for a few feet, the ground had been graded up to about the level of the ground on the northerly side, and enclosed by a wall of stone, the southerly face of which was five or six feet high.

The petitioner also testified, respecting the relative situation of this house and that of other houses on Englewood Avenue, that, when he filed his statement, there was a brick house in process of erection on the north side of Englewood Avenue at its intersection with Roxbury Avenue, which was up one story, and he thought the masons were at work laying the walls of the second story; that there was a two-story house, the first story being of stone and brick, and the second story of wood, on the north side of Englewood Avenue, between the premises in question and Beacon Street, as well as another house of two stories, entirely of stone, on the same side of Englewood Avenue, at its junction with Beacon Street; that no house on the northerly side of Englewood Avenue, which could be seen from such avenue, answered the description in his statement except the house in question, and that there was no other house anywhere in the vicinity answering at all to such description; that up to

and at the time of filing his statement, he believed Herbert Moseley to be the owner of the premises, and did not know that the respondent was the owner thereof; and that both the plans and specifications of the house, by which he did his work, were for a house owned by Herbert Moseley, the name of the respondent not appearing on either of them.

The petitioner contended that the question of the sufficiency of the description in the statement should be submitted to the jury, under proper instructions; but the judge ruled, as requested by the respondent, that the statement filed in the registry of deeds was insufficient, and ordered the petition to be dismissed. The petitioner alleged exceptions

*C. F. Hall*, for the petitioner.

*S. H. Tyng*, for the respondent.

KNOWLTON, J.   The only question in this case is whether the description of property in the petitioner's statement, filed in the registry of deeds, was sufficient to answer the requirements of the statute. Such a description should be " sufficiently accurate for identification." ˙ Pub. Sts. c. 191, § 6.   But § 8 of the same chapter provides, that " the validity of the lien shall not be affected by any inaccuracy in the statement relating to the property to be covered by it, if such property can be reasonably recognized from the description."

In the case at bar, the name of the owner was given only according to the best knowledge and belief of the petitioner, and it turned out that he was mistaken.   While, to conform to the law, the owner's name should always be given in the statement if possible, the omission of it, or a mistake in it, if it is not known to the claimant, is not necessarily fatal to the lien. *McPhee* v. *Littlefield*, 145 Mass. 565.   An incumbrance created by filing a statement claiming a lien can in no event remain long before the lien is enforced by proceedings in court.   The possible existence of such an incumbrance is commonly suggested by the condition of the property so far as to put purchasers upon inquiry ; and the statute contemplates that one examining a title may find it necessary to look beyond the names indexed in the registry to the descriptions of the lands in the statements recently filed.

By the description before us, one is directed to that part of

Englewood Avenue which lies between Roxbury Avenue and Beacon Street. He is told that the lot is situated near Roxbury Avenue. As if to indicate that the description may be indefinite, or inaccurate in other particulars, it is said that the lot " may be identified by the house standing thereon, the first two stories being of stone and the third story of wood." The description of the house was not inaccurate nor misleading. If the lower part of it was properly called a basement, it was, according to the definitions of lexicographers and the common understanding of the word, a story of the building. This house was about three hundred feet northerly of Englewood Avenue, and with open land between it and the avenue. Up to this point there was no error in the description, either of the house or of the lot. Moreover, there was " no other house anywhere in the vicinity answering at all to such description."

If it were not for the inaccuracies hereafter to be referred to, there could be no doubt of the sufficiency of this description. The fact that the limits and boundaries of the lot were not set out in the statement is immaterial, if, upon identifying the place, they could with reasonable effort have been otherwise ascertained. And it is probable that the extent of the lot upon which the house stood was either apparent, or could readily have been determined from the way in which the land was used, or from recorded deeds, or in some other way.

Were there such errors in the description that the court could say, as matter of law, that the lot could not be reasonably recognized ? The error in name could not have been very important in relation to identification ; for the name purported to be given only to the best of the petitioner's knowledge and belief, and the name used was that of a person who was called the owner of the house in the plans and specifications, and who had such relations to the property that the petitioner then supposed him to be the owner of the lot. The language of the description implied that the lot was on the line of Englewood Avenue, when in fact there was other land between it and the avenue. But from the evidence, the jury might have thought that, to the eye of an observer, the house appeared to be on a lot which was on the line of the avenue. It was said to be the first house from Roxbury Avenue, and it appears that the erection of another

house was then going on, and had proceeded up to the second story, and that, if both were to be counted as houses on Englewood Avenue, this would be the second. So it was said that this was the second from Beacon Street, while there was a house on the lot at the corner of Beacon Street and Englewood Avenue, which, if counted as on the avenue, would make this the third. But none of these houses could have been mistaken for that named in the statement.

A majority of the court are of opinion that it was for the jury to interpret the evidence, and apply the description to it, and determine upon the facts, as they might find them, whether the lot could have been reasonably recognized from the description taken as a whole.                                   *Exceptions sustained.*